**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

SONY INTERACTIVE
ENTERTAINMENT
LLC,

Plaintiff,

v.

THE PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A",

Defendants.

Case No. 25-cv-04642

Judge Mary M. Rowland

**MEMORANDUM OPINION AND ORDER**

Defendant MILIYAE ("Miliyae") moves to set aside the default judgment entered against it. [67]. Plaintiff Sony Interactive Entertainment LLC ("Sony") opposes the motion. [81]. For the reasons stated, Miliyae's motion is denied.

## I.    Background

Sony, together with Sony Interactive Entertainment Inc., is the owner of U.S. Trademark Reg. No. 5,748,316 (the "PLAYSTATION Trademark"). [17] ¶ 7. Sony contends that Miliyae sold counterfeit goods on Amazon that used the PLAYSTATION Trademark. [81] at 3.

On April 29, 2025, Sony filed this action naming Miliyae as a defendant. [1] [2]. On May 2, 2025, this Court entered a Temporary Restraining Order ("TRO") that, among other things, enjoined Miliyae from infringing the PLAYSTATION Trademark and ordered Amazon to restrain funds in Miliyae's Amazon account. [23] ¶¶ 1–2, 5.

1

Amazon later confirmed the restraint on Miliyae's Amazon account and provided Sony the e-mail address used by Miliyae to register its Amazon account. [82] ¶ 4.

On May 27, 2025, Sony completed service of process[1] on Miliyae via its registered Amazon e-mail address. [82] ¶ 5; [82-4]. That same day, Sony (1) served expedited discovery requests on Miliyae via email, [82] ¶ 6; [82-5], (2) provided Miliyae notice of the TRO via email, [82] ¶ 7; [82-6], (3) moved for entry of a preliminary injunction, [82] ¶ 8; [33], and (4) provided Miliyae notice of its motion for entry of a preliminary injunction via email. [82] ¶ 8; [82-7].

Around May 2025, Miliyae discovered that the funds in its Amazon account were frozen and immediately retained a Chinese service agency known as "Fuzi Cross-border" ("Fuzi") to communicate with Sony's counsel on Miliyae's behalf and secure a settlement. [67-1] ¶ 4. Miliyae concedes that Fuzi acted as its agent. [84] at 1.

On June 17, 2025, Fuzi forwarded Miliyae a proposed settlement from Sony that bundled five defendants together. [67-1] ¶¶ 6–7. Though Miliyae wanted to proceed with the settlement offer, the deal collapsed when the other defendants in the bundle refused to pay. *Id.* ¶ 7. Following the collapse, Miliyae continued to push Fuzi to negotiate a separate, individual settlement. [67-1] ¶ 9; [67-2]; [67-3].

On August 19, 2025, Sony moved for entry of default and default judgment, [57], and e-mailed notice of its motion to Miliyae. [82] ¶ 9, [82-8]. On August 21, 2025, this Court set a September 5, 2025 deadline for Miliyae to respond to the motion for

---

[1]The TRO permitted Sony to complete service of process on Miliyae by electronically publishing a link to the Complaint, the TRO, and other relevant documents on a website and sending an e-mail to Miliyae with a link to the website. [23] ¶ 7.

2

default. [61]. Sony provided Miliyae, via email, with notice of the August 21, 2025 order that same day. [82] ¶ 10; [82-9].

Miliyae did not respond by the September 5, 2025 deadline. As such, on September 12, 2025, Sony filed a status report [63] confirming that the deadline had passed and e-mailed notice of the status report to Miliyae. [82] ¶ 11; [82-10]. On September 15, 2025, this Court entered a Default Judgment Order against Miliyae. [65]. Sony provided Miliyae, via email, notice of the Default Judgment Order that same day. [82] ¶ 12; [82-11].

Though default judgment had been entered, Miliyae claims that it did not comprehend the legal significance or finality of the Default Judgment Order. [67-1] ¶ 10. Instead, because Fuzi never informed it otherwise, Miliyae mistakenly believed the case remained open. *Id.* ¶¶ 9, 10.

From September through November 2025, Miliyae continued to follow up with Fuzi, reiterating its desire to reach a settlement. [67-1] ¶ 9; [67-2]; [67-3]. Fuzi assured Miliyae that a new settlement agreement was pending. *Id.* On November 2 2025, an attorney[2] purporting to represent Miliyae contacted Sony's counsel regarding potential settlement. [82] ¶ 15; [82-16]. On November 5, 2025, Fuzi forwarded Miliyae an email from Sony's counsel stating that Sony was "waiting on information and/or a funds transfer from a third-party before we can further consider settlement negotiations." [67-1] ¶ 11; [67-4]. Miliyae maintains that this

---

[2]Miliyae contends that it never had direct contact with this attorney. [84-1] ¶ 9. If Fuzi engaged the attorney to assist it, Miliyae maintains that Fuzi did so without informing Miliyae. *Id.* ¶ 10.

3

communication reinforced its belief that settlement negotiations remained active and that the case was not closed. [67-1] ¶¶ 11, 12.

From November 2025 through January 2026, Miliyae continued to press Fuzi for progress updates, expressing frustration over the delays despite its explicit instruction to settle. [67-1] ¶¶ 8, 9; [67-2]; [67-3]. Miliyae claims that, due to Fuzi's assurances, it did not file an appearance in this action because it mistakenly believed that Sony was aware of its intent to settle and that a resolution was imminent. [67-1] ¶ 12.

On January 19, 2026, Miliyae finally realized that Fuzi was ineffective and retained its current U.S.-based counsel, Veritas Light Law Group P.C. ("Veritas"), to intervene. [67] at 6; [67-1] ¶ 13. Veritas thereafter explained to Miliyae that default judgment had been entered against it and that immediate legal action was required. *Id.*

Upon failing to secure a settlement from Sony, [67-6], Miliyae, through Veritas, filed this instant motion to set aside, pursuant to Rule 60(b), the default judgment on January 23, 2026. [67]. In its motion, Miliyae argues that it did not ignore this lawsuit, but instead asserts that Fuzi—who lacked competency to navigate the U.S. legal system—misled it into believing this matter was being properly handled and was on the verge of settlement. *Id.* at 2–3.

## II.    Legal Standard

"Relief from a final judgment may be granted pursuant to Rule 60(b) under exceptional circumstances." *Wehrs v. Wells*, 688 F.3d 886, 890 (7th Cir. 2012). The

4

Seventh Circuit has "characterized the district court's considerable latitude in making its decision as 'discretion piled on discretion.'" *Id.* "In order to have a default judgment vacated, the moving party must demonstrate: (1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Id.* (cleaned up). This standard "establishes a high hurdle for parties seeking to avoid default judgments and requires something more compelling than ordinary lapses of diligence or simple neglect to justify disturbing a default judgment." *Jones v. Phipps*, 39 F.3d 158, 162 (7th Cir. 1994) (citations omitted).

### III.     Analysis

The Court is not unsympathetic to what happened to Miliyae. According to the filing, Fuzi failed to do its job and left Miliyae in a difficult situation. But the proper remedy for Fuzi's inaction is a breach of contract action against Fuzi, not a motion to vacate. The record reflects that Miliyae got notice that default would be entered, [82] ¶¶ 9–12; [82-8]; [82-9]; [82-10], and did not act until January 23, 2026. Miliyae blames this neglect on Fuzi's conduct. But Miliyae itself elected to retain Fuzi to communicate with Sony's counsel and resolve this matter for it. [67-1] ¶¶ 4, 5. The fact that Fuzi was not a U.S.-based attorney with competency in U.S law was Miliyae's decision. Miliyae was warned by Sony to obtain U.S. legal counsel, [82-4], and the fact that Miliyae eventually did so shows it has the wherewithal to do so. At the end of the day, however, Miliyae chose Fuzi as its agent. And when Sony's counsel sent notice of all required deadlines, [82] ¶¶ 4–12, Fuzi did nothing. Unfortunately for Miliyae, it is bound by Fuzi's inaction. *Choice Hotels Int'l, Inc. v. Grover*, 792 F.3d

753, 754 (7th Cir. 2015) ("litigants are bound by the acts and omissions of their chosen agents"); *United States v. 7108 W. Grand Ave., Chicago, Ill.*, 15 F.3d 632, 634 (7th Cir. 1994) ("under the law of agency the principal is bound by his chosen agent's deeds."). And just as Fuzi's conduct does not excuse Miliyae's neglect, neither does Miliyae's belief that a settlement with Sony was imminent. *See e.g.*, *Chapter 4 Corp. v. Partnerships & Unincorporated Associations Identified on Schedule A*, No. 20 C 6115, 2021 WL 1906461, at *2 (N.D. Ill. May 12, 2021) ("it is well-settled that confusion over the status of settlement discussions does not provide good cause for default."); *see also Guangzhou Luck Com. Co. v. Individuals, P'Ships, & Unincorporated Ass'ns on Schedule A*, No. 23 C 1876, 2024 WL 5501405, at *7 (N.D. Ill. Sept. 30, 2024). Accordingly, under the relevant legal standards, Miliyae's motion to vacate must be denied for failure to demonstrate good cause.

That said, the substantive issues raised by Miliyae's motion give the Court pause. As Miliyae points out, Sony was never entitled to the statutory damages it received in the Default Judgment Order because, under 15 U.S.C. § 1117(c), such damages are only authorized in cases "involving the use of a counterfeit mark." *Id.* "Counterfeit mark" is defined as "a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use." 15 U.S.C. § 1116(d)(1)(B)(i). Consequently, "a claim for trademark counterfeiting lies only against a defendant's counterfeit uses of a mark *on the same goods or services* as are covered by the plaintiff's registration of that mark." *SRAM, LLC v. RFE Holding (Canada) Corp.*,

6

No. 15 C 11362, 2017 WL 11884822, at *1 (N.D. Ill. Mar. 7, 2017) (citation omitted) (emphasis added); *see also* 3 McCarthy on Trademarks and Unfair Competition § 25:15 (5th ed.) ("For example, if the hypothetical mark REGIS is registered only for personal computers, while the trademark owner might well have traditional trademark infringement civil remedies against the unauthorized use of REGIS on computer printer ink cartridges, such a use is not a 'counterfeit' for the purpose of obtaining the special remedies.").

The PLAYSTATION Trademark is registered under International Class 28 and covers:

> Hand-held games with liquid crystal displays; hand-held units for playing electronic games other than those adapted for use with television receivers only; protective carrying cases specially adapted for handheld video games; parts and accessories exclusively used with hand-held games with liquid crystal display; consumer video game consoles for use with an external display screen or monitor; game controllers for consumer video game consoles; controllers for consumer game consoles; handheld units for playing electronic games, other than those adapted for use with an external display screen or monitor; hand-held games with liquid crystal display

[82-1]. The accused product sold by Miliyae is a fleece blanket. [82] ¶ 3. A fleece blanket is not the same as any of the goods or services covered by the PLAYSTATION Trademark. As such, statutory damages for Miliyae's trademark infringement seem inapplicable.

Sony has not responded to this argument made by Miliyae, and authority may very well exist that undermines Miliyae's position. Yet based on the authority before the Court, it appears Sony's motion for default judgment sought relief from Miliyae that Sony was not entitled to. While this, of course, does not relieve Miliyae of its

burden to establish good cause for vacating the default judgment, it does warrant a reevaluation of this Court's approach to Schedule A litigation. It is well known that many Schedule A cases in this district proceed *ex parte*, without adversarial briefing, leaving courts as the only check on whether Schedule A plaintiffs are seeking relief they are legally entitled to obtain. Given what occurred here, this Court will scrutinize requests for statutory damages in trademark infringement cases more closely moving forward.

## IV. Conclusion

For the stated reasons, Defendant Miliyae's motion to set aside the default judgment, [67], is denied.

ENTER:

Dated: April 30, 2026

MARY M. ROWLAND
United States District Judge

8